324-0575. The people of the state of Illinois. Appellee by Justin Nicolosi v. Tacky J. Evans. Appellant by Omar J. J. L. Counsel, you may proceed. Mr. Nicolosi, Honorable Justices, may it please the court. My name is Omar Jalil and I represent the appellant Tacky Evans, who seeks a reversal of his felony domestic battery conviction based on the ineffective assistance of his trial counsel. His trial counsel is ineffective for two reasons. The first reason was because trial counsel introduced Defendant's Exhibit No. 1, which was a photo depicting a prior incident of domestic battery that involved Mr. Evans, Ms. Gonzalez, who is the victim in the charge of defense. There was no reason for trial counsel to admit Defendant's Exhibit No. 1. The decision was unreasonable. No rational attorney would have admitted Defendant's Exhibit No. 1 into evidence. This decision allowed the state's attorney's office to argue that Mr. Evans had a propensity to commit domestic battery and that was done without proper judicial finance as required by Section 115-7.4. And it also allowed the state to argue and to explain the reasons why Ms. Gonzalez didn't call the police as a result of this alleged incident. Additionally, this decision cannot be regarded as trial strategy. The central issue at court, at the trial, was Ms. Gonzalez's credibility. And the introduction of Defendant's Exhibit No. 1 did nothing to attack her credibility. All it was used for was to show that Mr. Evans had a what's greatly prejudicial of how soon this prior incident occurred. It was within a month. Ms. Gonzalez testified that it was at most a few weeks old. And then second, trial counsel was ineffective based upon his decision not to seek a lesser included instruction. That decision also cannot be regarded as trial strategy when it was based on a misapprehension of the law. The trial judge asked trial counsel whether there were any other prior, other included offenses. And in response to that, trial counsel stated, no, your honor, there are no lesser included offenses. This statement was patently incorrect. Misdemeanor domestic battery is a lesser included offense of aggravated battery. That's a point that the state has not contested in their responsive filings. And the fact that trial counsel made this statement to the trial court takes it out of the world of trial strategy when it's solely based upon him not knowing that a misdemeanor domestic battery is also a lesser included offense of aggravated battery. And finally, the state has argued that these issues don't matter because the prejudice that Mr. Evans hasn't suffered any prejudice as a result of trial counsel's error. The sole purpose of preventing other crimes evidence is because it proves too much. And the prejudice that Mr. Evans suffered as a result of this is immeasurable. This was a case where the victim testified to an How do you apply Strickland to this case? Well, I mean, so I would say that the error occurred and that but for this error, the reasonable outcome of the trial would have been evidence that the state presented is Mr. Evans's admission in the jail recording that he had slapped Mrs. Gonzalez. The evidence related to the strangulation was inconsistent. It was contradictory. The jury showed that they had some issues with it based upon their questions. And the way... And what were their questions? They were, they asked... They asked questions to the jury. They did ask questions. And then how... Which questions did they ask? One of the questions that they asked, Your Honor, was how certain is reasonable doubt percentage? That was responded... And then they also asked for a definition. The trial judge... Definition of what? Reasonable doubt. Okay. The trial judge appropriately responded by telling the jury that they had all the instructions to continue to deliberate. But that statement shows that there was an issue with the state's evidence. It wasn't a slam-dunk case. And then... And a lot of it had to do with how inconsistent Mrs. Gonzalez's testimony was with the officer's testimony and Ms. Courtney Cohen's testimony. You know, the officers responded to this scene as it was just a regular domestic battery situation. They didn't take any witness statements. They didn't take any photographs of Ms. Gonzalez. What do you mean by a regular domestic battery situation? Well, what I mean by that is the officers testified that domestic battery was their number one call that they were called out on. So I'm not trying to downplay the severity of a domestic battery call. What I'm trying to highlight is that this was a call that went on all the time. And they had a frequency, a familiarity of how to handle these types of routine, you know, quote-unquote bad word choice, but routine domestic battery calls versus a Class 2 felony where the victim has claimed that she essentially has been choked to near death. That she was choked for 30 seconds. But when they arrived, they don't see evidence that's consistent with that. They see evidence that's consistent with her being possibly slapped. Her eyes are puffy. Her red side of her face is puffy. And there's slight markings on her neck. But those slight markings aren't consistent with having been strangled to the point where the victim testified that she couldn't see or she couldn't see anymore, that she was getting dizzy, that she was seeing stars. That she testified that it lasted for 30 seconds. The police officers, when they arrived, didn't treat it that in a situation where somebody had just been strangled to virtual death here. They didn't take her to the hospital. They didn't take any photographs of her. They didn't take any statements of Courtney Cohen, even though she admitted that, told the police that she was on the phone when this occurred. And how she described the incident is just inconsistent with Ms. Cohen's testimony as well. How she described it, that Ms. Gonzalez testified that she was victimized by two separate choking incidents. And in between these incidents, she made a phone call on a FaceTime to Ms. Cohen. But Ms. Cohen testifies that she's seen essentially the first one when they're on the ground. And how she's testifying to it just doesn't add up to Ms. Gonzalez's testimony. In addition, Ms. Gonzalez testified that after this occurred, she ran into the laundry room and locked herself in there. But that's not what the police officers testified to. The police officers testified that when they arrived, she's the one that answered the door, which both of those can't be true at the same time. And when you say she, you're referring to the victim, correct? Ms. Gonzalez, yes. And this FaceTime call that was placed, there's no evidence of that. There's no recording. There's no digital recording of that at all that was ever introduced into evidence, correct? You're right, Your Honor. Thank you. Thank you. Your Honor, based upon the reasons stated here and in Mr. Evans' opening brief and his response to the brief, we respectfully request that Your Honor to enter an order that reverses his conviction for felling domestic battery and remands the matter for a new trial. Any questions? No. On both counts? I mean, on aggravated and potentially lesser included? Just send it back. Just send it back for a new trial, yes, Your Honor. Obviously, there was no second count. Thank you, Your Honor. Any further questions? No, I have no further. Okay. Counsel, you may be seated. Thank you, Your Honor. You'll have time to reply. Thank you. Counsel, you may respond. Thank you. Good afternoon, Your Honors. May it please the Court. Mr. Jalil, my name is Justin Nicolosi. I represent the state of Illinois in this matter. I'm sure the Court is aware, but I was not the attorney who wrote the brief in this case for the state, but I am arguing here. So please take it easy on me with your questions. I will try my best to answer them. The state submits that the defense counsel was not ineffective in this case. Regarding Issue 1, the photo of the slap from about a month prior to the current incident, we don't need to speculate why the defense attorney presented this evidence for the jury. He explained both during trial and during closing why he wanted this piece of evidence. I looked at the picture of the slap. There's the hand mark on there. He explained that he wanted this to kind of show the dichotomy of that injury, which was kind of a definitive slap in the picture, versus the pictures that were taken after the alleged choking and slapping in this case. Again, counsel isn't required to be a perfect attorney. On the surface, I could understand why a defendant might think that was an odd move, but again, we don't have to guess on this case. Counsel said if this victim was choked as she contended to police and at trial, there would be more definitive marks of the defendant's hands on her neck like there was on her thigh. In this case, as opposed to other cases cited in the brief, and I do recognize that you didn't write the brief. Anyway, that's why counsel went forward with this particular strategy, and the state submits that it's a reasonable strategy. Again, this evidence, contrary to what Mr. Jalil argued, the state argument is... I remember this question. Oh, yes, Your Honor. In this case, as opposed to the ones that some of them cited in the brief, the ones cited in the brief, there was a definitive acknowledgment by the defendant that he or she had agreed to the particular tactic. Yes. Is there any evidence in the record of this that doesn't make any difference? Your Honor, there's no evidence that the defendant actually consented to that particular strategy, and the case was Bell that my colleague cited. No, there is no... This case, of course, is different in that regard to Bell, as Mr. Jalil pointed out in his reply brief. The part of Bell that I think Ms. Theodorados, who wrote this brief, was referring to is the strategy of presenting a photo in order to kind of undercut some of the state's evidence. That's what happened in Bell, and even though that wasn't the basis for Bell's ultimate holding, it did, in dictum, discuss the strategy aspect of that case and did find that it was a reasonable strategy to present that photo. We would argue that it's a reasonable strategy here. Again, looking at this case, I don't know what else the defense counsel could have done. I'm going to kind of transition right into the prejudice to talk about the evidence in this case. It states in this there's no reasonable probability that the result of this trial would have been different if the defense counsel would not have presented that photo. Mikayla presented pretty strong testimony of what the defendant did to her. Two incidents of choking. If I could ask, in moving to reasonable probability, are you conceding error? No. In the second prong? So the second prong— With regard to— Okay, so you're going to move on to that? I can actually discuss counsel's performance regarding the second issue, and then I can get to prejudice at the end, if that's what Mr. Giulio did. I can certainly do that, too. So issue two, I'm going to kind of get out in front of it. As Mr. Giulio argued in his reply brief, I don't know if my colleague who wrote issue two responded to the question that was posed by the defendant. The issue was whether or not counsel's decision regarding the lesser-included instruction was— that decision was based on misapprehension of law. We didn't argue that in our brief. I understand that that would foreclose me from arguing that in an oral argument. I understand also that the court is not bound by waiver. The court can reach the issue if they so choose. I just wanted to point out that I don't think the evidence on that issue, regarding the fact that counsel said there are no lesser-included offenses, I don't know if that's as definitive as the defendant is arguing here, whether that counsel actually believed that there were no lesser-included offenses. I can't imagine for a second that this defense attorney thought that there were no lesser-included offenses. But wouldn't that demonstrate his incompetence? No. I think this is an issue where, again, if the court would allow me to keep talking about this— Oh, sure. —and fight our potential waiver of this, this is an issue I think that we need to hear more from defense counsel. I feel like if I had to guess what the defense counsel was saying is that we talked about it because the question that the court posed was, did you talk to your client about lesser-includeds? Counsel said, yes, I did. There are no lesser-included offenses or something. So please don't quote me on the verbiage of that. That's pretty darn close. I think it's pretty close. But what I think he's saying is that we're not offering any lesser-included offenses at this time. I think because he said he talked to the defendant about it, and I think that's the only rational conclusion. I don't think he's saying there's no lesser-includeds. Again, I don't think that would be incredibly incompetent. And that's because domestic battery, at least in this situation, is always a— Of course. —lesser-included. Yeah. So, again, I think this court can't decide based on this record what the defense counsel was thinking just based on that particular sentence that he offered to the trial court. So we can't tell definitively whether he was saying we aren't offering any lesser-includeds or whether he was so idiotic as to not know that there was a lesser-included. I don't think so, Your Honor. I can't possibly think that the defense counsel was this ignorant of the law to have made that statement. I feel like there has to be more to what he was saying or was trying to say that did. So your position is he was just saying we're not offering any other. That's my guess as to what he was saying. Or the author of your brief's position. Well, the author of the brief didn't mention that at all. They went a totally different direction on what they argued. I'm just saying I have to give this defense attorney a bit of credit as to not being completely, you know, with knowledge of the law that he would say there's no lesser-includes. I mean, I think this is kind of a Veech case where you need to hear from defense counsel a little bit more before you can make that determination because taking that sentence for what it is and running with it, I think is giving this attorney zero credit. And I think the attorney should be given a little bit more credit than that. But anyway, so that's where I stand on issue two. But regarding prejudice for both of these ineffective assistance issues, the state's going to argue that there is no prejudice to the defendant, no reasonable probability of indifference in the trial. The evidence is not closely balanced. I don't believe so, Your Honor. Michaela Gonzalez testified regarding the injuries she sustained. There's the defendant's phone call in the jail. Well, he admitted to was a misdemeanor, though, didn't he? Sure, but he certainly admitted that there was physical confrontation, certainly on his part, so there's no injuries on him, so it was probably a one-way dispute here. She had the pictures of her injuries. That was Pages 9 and 11 of the exhibit file. We saw her neck. It was very red. Whether or not there were finger marks on there, I think we can all agree that her neck was very red, which certainly supports her claim that she was choked. We have Courtney Cohn, who received a FaceTime call from Ms. Gonzalez during the incident. She couldn't see everything because of the angles of the phone, but she saw the defendant push Ms. Gonzalez. She saw the defendant on top of him with his hands around her neck. She saw him choke her twice when the first choke happened before the phone call. Does that suggest that she talked to somebody in between? I don't know what to make of that. That's kind of a difference in the evidence, but I don't think a couple of inconsistencies in the evidence renders this not a close case. I think it's not a close case at all. I think I misspoke there, but I'm going to say this isn't a close case at all, Your Honor. We have Courtney supporting Michaela's testimony in that regard. Of course, we have the officers who arrived. They heard angry yelling from a male inside. Michaela answered the door. She was obviously upset. She was scared, fearful. That supports the fact that something pretty terrible happened in that house, that residence. Again, the photos of Michaela's neck were, I think, pretty strong evidence that there was some strangulation, as she alleged. Based on all that evidence, I don't think the photo of Ms. Gonzalez's thigh from a month earlier, it would change the outcome of this case in any material respect. For that, I would argue that that defendant has not been able to establish prejudice in a strickland analysis. The state would request this court to affirm the defendant's aggravated domestic battery conviction. Are there any other questions? I'd be happy to answer them. I have one, and I know it's not your brief, but the person who wrote the brief cited the D.A.L.L.E. case for the proposition that a lesser included is typically strategy, having no impact on the ineffective assistance or competency of counsel. Now, that case involved a Class II, and I think another felony would have been a lesser included. Does it change it in your mind that the lesser included here – does it matter whether the lesser included here is a misdemeanor, therefore the risk that much less? Because, one, if you had the lesser included, in all or nothing, the lesser included would be a felony. And here, in all or nothing, the lesser included would be a misdemeanor, with significantly less consequences, not only jail, but stigma and job opportunities, the whole show. I understand that, Your Honor. That's a reasonable consideration. But I think what we're talking about in this case, I think the fact that the evidence of the misdemeanor, the underlying offense, was so certain in this case, I think that trying to – the one issue that I think there was maybe a little bit of dispute on was whether or not there was strangulation, and that, of course, was the aggravating factor. I think it was reasonable to focus on that particular element, because I think it was a guarantee that if they presented the lesser included, the domestic battery, that would have resulted in a conviction either way, regardless. So I think it was a reasonable strategy. You should try an all or nothing approach. There's a lot of cases that support the all or nothing approach. I understand the felony versus the misdemeanor. Most of those are the murder, second degree things like that. Sure, yeah. This is a little bit – like you said, I have to acknowledge there's a difference between a felony and a misdemeanor, of course. But if we're just talking about trying to have his client acquitted completely, I think this is a reasonable strategy. Thank you, sir. Thank you. Thank you, counsel. Counsel, you may reply. May I proceed, Your Honor? Yes, please. Thank you. Your Honor, in regards to the conversation that trial counsel had with the trial judge, the trial judge asked whether he had talked to Mr. Evans, and I quote, about any other type of offenses that may be considered lesser included, end quote. Trial counsel responded, quote, yes, judge. I don't believe there are any lesser included, end quote. That statement clearly shows that trial counsel was wrong on the ball. There's nothing else that can be read other than I don't believe there are any lesser included, that he didn't believe that a misdemeanor offense was a lesser included offense. The conversation was directly about lesser included offenses. So what was the question again from the court? Whether he had talked with Mr. Evans, quote, about any other type of, about any type of other offenses that may be considered lesser included, end quote. And his response was, yes, judge. I don't believe there are any lesser included. Okay, so really, plain language analysis would be, yes, I did talk to him, but I believe that the counsel believes there are no. Absolutely, Your Honor. Okay. And there was no further comment after that. There was no further comment after that.  And responding to Justice Bertani's question, whether it was. . . Let's say he didn't want a lesser included, okay, as a strategy, which has been proposed today as a possibility, okay. How would counsel frame that answer? Well, if asked by the court. Well, I think the issue would be the nature of that conversation that occurred. That conversation between trial counsel and Mr. Evans would be, if Mr. Evans is the one that approached this, or whether trial counsel brought it up. But the only logical thing would be, in this situation, that Mr. Evans would have had to approach this. Because trial counsel's opinion is that there are no lesser included. So he wouldn't be having conversations with Mr. Evans. No, no, no, no, no, no, no. Are we talking about the conversation between the court and defense counsel? Because defense counsel said, yes, which would mean presumably, yes, I've talked to my client. Correct, Your Honor. And then a comma, I don't believe, which goes to arguably his knowledge. So if you're going to try to suggest this is trial strategy, I mean, to make the claim that it's trial strategy, I think that's what opposing counsel is trying to say. Correct me if I'm wrong. I believe that's correct, Your Honor. And if you were the defense counsel in this exact situation, and you wanted to go all broke, all or nothing, would you have said to the court, I don't believe there are, or would you say, we elect not to? Yeah, of course, Your Honor. The language, I don't believe there are, that shows that counsel believes that there are no lesser included offenses. And I was trying to respond to Justice Bertani's previous question to the state, whether it would make a difference if Mr. Evans had agreed to this strategy. My answer to that would be no, and the reason was because that decision that Mr. Evans would have made couldn't be regarded as an informed decision when it was based upon advice that he's received from counsel that there are no lesser included offenses. So at that point, what is Mr. Evans supposed to do? When his trial counsel is saying there are no lesser included offenses here, he's left at that point to follow up. And in regards to— Well, that's fair speculation of a conversation, right, between the defendant and his counsel. Well, I mean, going on that trial counsel stated that he did have a conversation with Mr. Evans. Yes, but that's the answer, yes, to the court. Yes, I did have a conversation. But the substance of that conversation that trial counsel would have had, and he's saying that he did. We don't know that. We don't know. That's speculation. It is, but going off what's on the record is, Yes, answer to I did speak to my client, and then a comma, so to speak, I don't believe. That's on the record. Correct, yes, absolutely. And how else could you interpret it, I suppose, other than non-awareness? That's the defense's position. That's what I thought. That the conversation, even if he had a conversation with Mr. Evans, the advice that the trial counsel would have gave to Mr. Evans would have been incorrect. Based upon his statement, I don't believe there are any lesser. You need to go to that speculation. We don't need to, Your Honor. Okay. It's just I was trying to answer Justice Bertani's question. Oh, I'm sorry. That's okay. I got the answer. I believe my time is up, Your Honor. Okay. Thank you. No questions. Thank you. None further from me. We have no further questions. Thank you, Your Honor. Thank you, sir. Thank you, sir. Thank you, counsel. Well, thank you, counsel, both, for your fine arguments in this matter this afternoon. It will be taken under advisement by this court, and the court will issue a written decision. At this time, the court is adjourned.